DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} After stopping it for minor traffic violations, state troopers conducted a K9 sniff and subsequent search of the borrowed Cadillac Darrick Barbee Jr. was driving. The officers found approximately $120,000 worth of cocaine in a speaker in the trunk. Mr. Barbee was convicted of two counts of possession of cocaine. This Court affirms his convictions because they are supported by sufficient evidence and are not against the manifest weight of the evidence and because the trial court did not err by admitting into evidence the fruits of the warrantless search of the vehicle.
 FACTS {¶ 2} Trooper Richard Menges testified that he stopped the Cadillac Mr. Barbee was driving because it was following another car too closely and it had only one working brake light. According to the trooper, he followed Mr. Barbee on Interstate 80 and paced him driving at *Page 2 
about 63 miles per hour while following approximately 20 feet behind another vehicle. After stopping him, Trooper Menges learned that Mr. Barbee had borrowed the vehicle from a friend and was driving from Detroit, Michigan, to New Castle, Pennsylvania. Trooper Menges separately questioned the passenger of the vehicle. The trooper became suspicious because he felt the responses of the two men were inconsistent and Mr. Barbee "appeared nervous" while being questioned.
 {¶ 3} While the trooper was writing out warning slips for the traffic violations, he summoned a K9 officer to the scene. When Trooper Farabaugh arrived with his drug-sniffing dog, Trooper Menges told Mr. Barbee that a K9 officer would be walking his dog around the car. According to Trooper Menges, Mr. Barbee reacted physically to that news, indicating that he was becoming increasingly nervous.
 {¶ 4} Trooper Farabaugh walked his dog, Caesar, around the vehicle. Trooper Farabaugh testified that, before he could begin his normal search pattern, Caesar pulled him toward the open passenger side window. The trooper testified that this behavior change indicates the dog has detected an odor of illegal drugs and he is "working through it." The trooper then began walking the search pattern around the car, and Caesar alerted at the open driver's window by scratching and pawing into the window. The entire dog sniff lasted less than one minute.
 {¶ 5} According to Trooper Menges, after the dog alerted on the vehicle, the trooper told Mr. Barbee that the officers were preparing to search it. He asked again whether the vehicle contained illegal drugs. Mr. Barbee looked down at the floor and said, "huh-uh. . . . [H]e didn't answer [ ] no; he didn't answer [ ] yes." The troopers found two Ziplock bags of cocaine concealed in a speaker in the trunk. One bag contained 249 grams of cocaine powder and the *Page 3 
other contained 249 grams of crack cocaine. Officer Menges testified that the street value of the controlled substances found in the Cadillac totaled approximately $120,000.
 {¶ 6} The jury found Mr. Barbee guilty on both counts of possession of cocaine. He was sentenced to prison terms of four and three years to be served consecutively. Mr. Barbee has appealed, arguing that the trial court erred by denying his motion to suppress the fruits of the traffic stop and K9 "search" of his vehicle. He has also argued that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. This Court affirms the convictions because the traffic stop, K9 sniff, and subsequent search of the vehicle were each justified under the circumstances. Furthermore, the convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.
 THE TRAFFIC STOP {¶ 7} Mr. Barbee's first assignment of error is that both the traffic stop and the "K-9 search" of his vehicle were illegal and, therefore, the trial court erred in failing to suppress the fruits of that search. Mr. Barbee has specifically argued that the stop was pretextual and the alleged traffic violations, if committed, were too minor to justify the stop.
 {¶ 8} A motion to suppress evidence presents a mixed question of law and fact. State v. Burnside, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Therefore, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."Id.; but see, State v. Metcalf, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."Burnside, 2003-Ohio-5372, at ¶ 8. *Page 4 
 {¶ 9} In order to initiate a valid traffic stop, an officer must have a "reasonable suspicion that a motorist was violating a traffic law."State v. Poole, 9th Dist. No. 2336-M, 1995 WL 338477, at *3 (June 7, 1995) (citing State v. Carlson, 102 Ohio App. 3d 585, 593 (1995)). Reasonable suspicion is "something less than probable cause."Carlson, 102 Ohio App. 3d at 590. "[A] traffic stop will not be pretextual if the officer had specific and articulable reasons to believe the driver was violating the law." State v. Hunt, 9th Dist. No. 94CA005795, 1994 WL 686834, at *2 (Dec. 7, 1994). "[A]ny violation of a traffic law gives rise to a reasonable suspicion to make an investigatory stop." State v. Johnson, 9th Dist. No. 03CA0127-M,2004-Ohio-3409, at ¶ 11 (citing Whren v. United States, 517 U.S. 806
(1996); State v. Wilhelm, 81 Ohio St. 3d 444 (1998)). The extent of the violation is not the issue. The question is whether the officer could articulate specific facts supporting a reasonable suspicion that any violation had occurred. Id. at ¶ 12. Once a traffic stop has been initiated, the detention may not last any longer than is "necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500
(1983).
 {¶ 10} In this case, Trooper Richard Menges, the officer who initiated the traffic stop, testified at the suppression hearing that he saw the Cadillac and noticed that "its brake light was out." As the trooper followed the Cadillac, he saw that it was following too closely behind the vehicle in front of it. The trooper initiated the traffic stop after he had observed what he believed to be two separate traffic violations.
 {¶ 11} Mr. Barbee has argued that he did not violate the tail light requirement because Section 4513.05 of the Ohio Revised Code requires only one tail light that "shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted." Trooper Menges, however, testified about an inoperable brake light rather than a tail light. Section 4513.071(A) of *Page 5 
the Ohio Revised Code requires all motor vehicles operated on a highway to have two or more functioning brake lights that are "actuated upon application of the service brake." There is an exception for passenger cars "manufactured or assembled prior to January 1, 1967." R.C. 4513.071(A). There was no evidence, however, that the Cadillac Mr. Barbee was driving on April 26, 2004, was nearly 40 years old, as would be required for it to fall under the exception. See id. At trial, the evidence revealed the Cadillac was a 1994 model. It is the apparent vintage of the vehicle, however, observable to the officer prior to the stop, that created a "reasonable suspicion that [Mr. Barbee] was violating a traffic law" by displaying only one operable brake light. See State v. Poole, 9th Dist. No. 2336-M, 1995 WL 338477, at *3 (June 7, 1995) (citing State v. Carlson, 102 Ohio App. 3d 585, 593 (1995)). Mr. Barbee did not offer any evidence at the suppression hearing tending to show that the Trooper's suspicion was not reasonable.
 {¶ 12} Trooper Menges also testified that he observed the Cadillac following a vehicle too closely. He estimated the space between the vehicles to be approximately 20 feet. Section 4511.34(A) of the Ohio Revised Code forbids following "another vehicle . . . more closely than is reasonable and prudent, having due regard for the speed of [the] vehicle . . . and the condition of the highway." Trooper Menges's testimony supported a reasonable suspicion that Mr. Barbee was violating the law by following "more closely than [was] reasonable and prudent" under the circumstances. Mr. Barbee did not question the trooper about road conditions or vehicle speed or offer any evidence at the suppression hearing tending to show that the trooper's suspicion was not reasonable. The trooper's reasonable, articulable suspicion that Mr. Barbee was violating two separate traffic laws justified the stop. *Page 6 
 THE DOG SNIFF {¶ 13} Mr. Barbee has argued that the "K-9 [s]earch" of the vehicle was unreasonable because "[t]he [t]rooper had no articulable suspicion causing him to fear that Mr. Barbee was armed or that contraband would be found in the vehicle." An exterior dog sniff, however, is not a search within the meaning of the Fourth Amendment. State v. Shook, 9th Dist. No. 93CA005716, 1994 WL 263194, at *4 (June 15, 1994) (citingUnited States v. Place, 462 U.S. 696, 707 (1983)). Therefore, if a traffic stop is justified, and does not last any longer than necessary to effectuate the original purpose of the stop, an officer may simultaneously conduct a canine sniff of the exterior of the vehicle without any additional reasonable, articulable suspicion of criminal activity. State v. White, 175 Ohio App. 3d 302, 2008-Ohio-657, at ¶ 15
(citing State v. Carlson, 102 Ohio App. 3d 585, 594 (1995).
 {¶ 14} This Court has determined that the traffic stop in this case was justified by the trooper's reasonable suspicion that Mr. Barbee had committed two traffic violations. Trooper Menges testified at the suppression hearing that he was writing the warning citations for those violations when Trooper Farabaugh arrived with the drug-sniffing dog. Furthermore, the videotape revealed that the dog sniff lasted approximately one minute. As Trooper Menges had not yet completed the citations for the traffic violations, he did not need any additional suspicion or probable cause to justify the canine sniff of the vehicle. See White, 2008-Ohio-657, at ¶ 15 (citing Carlson,102 Ohio App. 3d at 594; State v. Shook, 9th Dist. No. 93CA005716, 1994 WL 263194, at *4 (June 15, 1994)).
 DRUG DOG RELIABILITY {¶ 15} Mr. Barbee has argued that the search of the vehicle violated his constitutional rights to be free from unreasonable search and seizure because the troopers lacked probable *Page 7 
cause to justify it. Mr. Barbee bases this argument primarily on his assertion that the drug-sniffing dog used in his case "should not be deemed credible enough to establish probable cause to search the vehicle" because records are not kept regarding his reliability in the field. Specifically, Mr. Barbee was interested in learning how frequently Caesar has given a false alert when illegal drugs were not present.
 {¶ 16} The evidence indicated that the dog handler in this case, Trooper Farabaugh, had been working as a dog handler with the Ohio State Highway Patrol for 13 years prior to Mr. Barbee's traffic stop. Trooper Farabaugh testified that he had been working with the dog, Caesar, for two years. He testified that Caesar is "extremely reliable." He also testified that, at the time of Mr. Barbee's traffic stop, Caesar was certified by both the North American Police Work Dog Association and the Ohio Police Officers Training Academy.
 {¶ 17} Although Trooper Farabaugh was unable to provide field records as requested by the defense, he did provide training records. Trooper Farabaugh testified that, in addition to successfully completing initial specialized training, Caesar has been required to complete extensive ongoing training in order to maintain his certification with the Ohio State Highway Patrol. The trooper testified that Caesar is trained to detect five different drugs. At least once or twice per month, Trooper Farabaugh meets with other dog handlers to hide small amounts of these drugs in various areas to practice searching with their dogs. The dogs' various behavioral changes and indications are recorded in the training record. Trooper Farabaugh testified that Caesar is tested with "blank cars, as well as ones with drugs in them." According to Trooper Farabaugh, this frequent, ongoing training helps the dog improve its skills and helps the handler to recognize the dog's specific behavioral changes when drugs are detected and to eliminate any *Page 8 
tendency to unconsciously cue the animal. The trooper testified that Caesar has passed all of his ongoing training evaluations.
 {¶ 18} This Court has previously held that, "once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." State v.Carlson, 102 Ohio App. 3d 585, 600 (1995) (citing Shook, 1994 WL 263194
at *10)). In Carlson, however, the reliability of the individual dog was not directly challenged.
 {¶ 19} A defendant did challenge a dog's reliability in a later case in which this Court held that "[t]he dog's alert on [the] pickup truck provided probable cause to believe that illegal drugs would be found in it." State v. Anderson, 9th Dist. No. 95CA006052, 1995 WL 734036, at *4 (Dec. 13, 1995). In that case, the evidence included real world statistics on the field accuracy of the drug-sniffing dog. The defendant argued, however, that because drugs were found in just 61% of the dog's positive alert incidents, "the chances of finding contraband based upon the `alert' of this dog would be approximately the same as flipping a coin." Id. This Court has defined probable cause for a search based on a dog's alert as "a fair probability" of finding contraband in a particular place. Id. This Court determined that the evidence inAnderson was sufficient to find that an alert from that dog provided "a `fair probability' that drugs would be found in a vehicle on which the dog . . . alerted." Id. (quoting State v. Carlson, 102 Ohio App. 3d 585,600 (1995)).
 {¶ 20} In the 2004 case of State v. Nguyen, the Sixth District Court of Appeals directly faced the question of whether "real world reports of [the particular dog's] performance in the field are material to [the defendant's argument] of lack of probable cause to conduct a warrantless search of [defendant's] motor vehicle." State v. Nguyen,157 Ohio App. 3d 482, *Page 9 2004-Ohio-2879, at ¶ 52. After an extensive survey of state and federal case law, the Sixth District adopted the majority view that "proof of the fact that a drug dog is properly trained and certified is the only evidence material to a determination that a particular dog is reliable."Id. at ¶ 55. Therefore, "the fact that the trooper cannot provide a percentage of alleged false alerts is immaterial to a determination of [the dog's] reliability." Id. at ¶ 63. Although testimony regarding a particular dog's performance history, health, or quality of training could call into question the reliability of a particular dog, a trial court may properly find "from the uncontested training and certification evidence that [the dog] was [ ] sufficiently trained and reliable."State v. Calhoun, 9th Dist. No. 94CA005824, 1995 WL 255929, at *4 (May 3, 1995); see Nguyen, 2004-Ohio-2879, at ¶ 65 (Singer, J., concurring).
 {¶ 21} In this case, Mr. Barbee did not question the quality of Caesar's training or the validity of his certifications. Likewise, there was no question regarding Caesar's health at the time of the stop. Trooper Farabaugh testified that he is an experienced dog handler who had been working with Caesar for two years before this stop. Although the training records were not offered into evidence at the suppression hearing, the transcript reveals that the State supplied Mr. Barbee with voluminous records showing that Caesar had performed well in training. The evidence in this case was sufficient for the trial court to determine that Caesar was sufficiently trained and reliable for his alert to give the troopers probable cause to search the vehicle.
 {¶ 22} The trial court properly overruled Mr. Barbee's motion to suppress the evidence obtained in the warrantless search of his vehicle. The traffic stop, the dog sniff, and the subsequent search were reasonable under the circumstances. Mr. Barbee's first assignment of error is overruled. *Page 10 
 SUFFICIENCY {¶ 23} Mr. Barbee has argued that the trial court incorrectly denied his motions for acquittal because his convictions were not supported by sufficient evidence. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins, 78 Ohio St. 3d 380,386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Barbee's guilt beyond a reasonable doubt. State v.Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 24} Mr. Barbee was convicted of two counts of violating Section 2925.11(A) of the Ohio Revised Code by knowingly possessing crack cocaine in an amount exceeding 25 grams, a first-degree felony, and by knowingly possessing non-crack cocaine in an amount between 100 and 500 grams, a second-degree felony. Mr. Barbee has argued that the State failed to present any evidence that he knew there was cocaine in the trunk of the car he had borrowed from a friend.
 {¶ 25} According to the Ohio Revised Code, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). The term "possess" used in R.C. 2925.11(A) is defined in R.C. 2925.01(K) as: "having control over a thing or substance, but may *Page 11 
not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 26} "Possession may be actual or constructive." State v.Collins, 9th Dist. No. 23005, 2006-Ohio-4722, at ¶ 11 (quoting State v.Kobi, 122 Ohio App. 3d 160, 174 (1997)). "Constructive possession exists when an individual is able to knowingly exercise dominion or control over an object, even though it is not within his immediate physical possession." State v. Ruby, 149 Ohio App. 3d 541, 2002-Ohio-5381, at ¶ 36. "[O]wnership need not be proven to establish constructive possession." Collins, 2006-Ohio-4722, at ¶ 11. "Readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession."Ruby, 2002-Ohio-5381, at ¶ 36 (citing State v. Brown, 2d Dist. No. 17891, 2000 WL 966161 (July 14, 2000); State v. Scalf,126 Ohio App. 3d 614 (1998)). "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it. Id. at ¶ 30 (citingState v. Brooks, 113 Ohio App. 3d 88 (1996)). Furthermore, circumstantial evidence has the same probative value as direct evidence.State v. Jenks, 61 Ohio St. 3d 259, 272 (1991).
 {¶ 27} Mr. Barbee was caught driving a borrowed Cadillac with $120,000 worth of cocaine in the trunk. There was no evidence that Mr. Barbee did not have access to the trunk of the car he was driving. The State presented additional circumstantial evidence that Mr. Barbee knew the cocaine was there. Trooper Menges testified that, when he told Mr. Barbee that a K9 officer had arrived and would be walking his dog around the car, Mr. Barbee "looked down and he started licking his lips [and] . . . [h]is mouth went dry. And you could just . . . see sweat start beading off his forehead." Later, when the trooper told Mr. Barbee that the dog had indicated that illegal drugs were present and the officers were preparing to search the vehicle, Trooper *Page 12 
Menges asked Mr. Barbee if there were any drugs in the car. According to the trooper, Mr. Barbee did not give a clear answer, but "just looked down on the floor and . . . didn't answer me no; he didn't answer me yes."
 {¶ 28} Furthermore, it was not a small quantity of cocaine that the troopers found concealed in the trunk. It is unlikely that Mr. Barbee's friend lent him the vehicle for a lengthy drive across three states without mentioning that the trunk held $120,000 worth of cocaine. The Third District Court of Appeals has recognized that, the greater the amount of illegal drugs involved, the greater the likelihood that the defendant had the culpable mental state of knowing the drugs were present. See State v. Chapman, 73 Ohio App. 3d 132, 138 (1992) (citingState v. Dick, 3d Dist. No. 13-89-48, 1991 WL 44168 at *3 (Mar. 22, 1991)). That seems to ring true under the circumstances of this case.
 {¶ 29} Viewing the evidence in a light most favorable to the prosecution, it was sufficient to convince an average juror beyond a reasonable doubt that Mr. Barbee knowingly possessed the cocaine the troopers found in the trunk of the Cadillac. Therefore, the trial court correctly denied Mr. Barbee's Criminal Rule 29 motions for acquittal. Mr. Barbee's assignment of error regarding the Rule 29 motions is overruled.
 MANIFEST WEIGHT {¶ 30} Mr. Barbee's final assignment of error is that his convictions are against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a *Page 13 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 31} Mr. Barbee has argued that his evidence was more persuasive than that offered by the State. Mr. Barbee, however, did not present any witnesses or other evidence at his trial. Mr. Barbee did not deny having access to the trunk. In fact, at least one of the troopers testified that suitcases were found in the trunk. Mr. Barbee's lawyer argued that those suitcases were evidence that Mr. Barbee and his passenger were telling the truth about driving to Pennsylvania. Mr. Barbee also did not attempt to prove that the cocaine in the trunk belonged to his passenger. He merely theorized, through the arguments of his lawyer and his cross-examination of the State's witnesses, that that owner of the vehicle loaned him the car without mentioning the large quantity of cocaine in the trunk.
 {¶ 32} There was no direct evidence regarding who owned the drugs or who had placed them inside the vehicle. In closing argument, Mr. Barbee's lawyer pointed out that no additional contraband, cash, or drugs were found in the car or on Mr. Barbee's person. He suggested to the jury that someone who knew he was carrying $120,000 worth of drugs would certainly also carry a gun. While the circumstantial evidence in this case may allow for alternative interpretations, that "is insufficient for reversal on a manifest weight review where [this Court is] guided by the presumption that the jury's interpretation was correct." See State v. Figueroa, 9th Dist. No. 22208, 2005-Ohio-1132, at ¶ 10.
 {¶ 33} In light of the evidence discussed in Mr. Barbee's previous assignment of error, this Court cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that Mr. Barbee's conviction must be reversed and a new trial ordered. Accordingly, the *Page 14 
verdict was not against the manifest weight of the evidence. Mr. Barbee's final assignment of error is overruled.
 CONCLUSION {¶ 34} The traffic stop was justified by the trooper's reasonable suspicion that Mr. Barbee had violated two traffic laws. The dog sniff was not a search and was conducted while the first trooper was completing warning slips for the traffic violations. The dog's alert supplied the troopers with probable cause to search the vehicle. Therefore, the trial court correctly denied Mr. Barbee's motion to suppress the fruits of that search.
 {¶ 35} Mr. Barbee's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Therefore, the decision of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 15 
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
 CARR, P. J. MOORE, J. CONCUR *Page 1