[Cite as *State v. Randhan*, 2011-Ohio-4936.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.      25763 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEBORAH J. RANDHAN | | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.     2010 TRC 9568 |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2011

CARR, Presiding Judge.

{¶1}    Appellant, the City of Cuyahoga Falls, appeals the judgment of the Stow Municipal Court.  This Court reverses.

I.

{¶2}    This case emanates out of a traffic stop which occurred on October 18, 2010, in Cuyahoga Falls, Ohio.  The defendant-appellant, Deborah Randhan, was cited by Cuyahoga Falls police with one count of operating a vehicle under the influence and one count of operating a vehicle with a prohibited blood alcohol concentration.  Randhan was arraigned at the Stow Municipal Court on October 25, 2010, at which time she pleaded not guilty to both charges.

{¶3}    On November 15, 2010, Randhan filed a motion to suppress evidence stemming from the traffic stop of her vehicle.  On December 21, 2010, the trial court held a hearing on the motion.  On January 6, 2011, the trial court issued its judgment entry and concluded that there was not reasonable suspicion to justify the stop of Randhan's vehicle.

{¶4}   On January 10, 2011, the City of Cuyahoga Falls filed a notice of appeal.  On appeal, the City raises two assignments of error.  As both assignments of error challenge the trial court's decision to grant Randhan's motion to suppress, we consolidate those assignments of error to facilitate review.

II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN GRANTING MS. RANDHAN'S MOTION TO SUPPRESS AS THE POLICE OFFICER STOPPED MS. RANDHAN'S VEHICLE AFTER WITNESSING A TRAFFIC VIOLATION."

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN GRANTING MS. RANDHAN'S MOTION TO SUPPRESS AS THE POLICE OFFICER WAS JUSTIFIED IN PERFORMING AN INVESTIGATORY STOP ON THE VEHICLE BASED ON THE TOTALITY OF THE CIRCUMSTANCES."

{¶5}   In its first assignment of error, the City argues that the stop of the vehicle was lawful because Officer Schmidt observed a traffic violation.  In the second assignment of error, the City contends that Officer Schmidt was justified in performing an investigatory stop in light of the totality of the circumstances.

{¶6}   The Supreme Court of Ohio has held:

"Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  (Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

{¶7}   It is well settled that an investigative traffic stop does not violate the Fourth Amendment of the U.S. Constitution where an officer has reasonable suspicion that the

individual is engaged in criminal activity. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 299. In order to make a lawful stop of a vehicle, "the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity." *State v. Johnson*, 9th Dist. No. 03CA127-M, 2004-Ohio-3409, at ¶6, citing *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618. Evaluating these facts and inferences requires the court to consider the totality of the surrounding circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, paragraph one of the syllabus, certiorari denied (1981), 454 U.S. 822. Furthermore, this Court has recognized that "[r]easonable suspicion is something less than probable cause." *State v. Epling* (1995), 105 Ohio App.3d 663, 664, citing *State v. VanScoder* (1994), 92 Ohio App.3d 853, 855. When "analyzing whether reasonable suspicion existed, this Court looks to the facts available to the officer at the moment of the seizure or the search and considers whether those facts would warrant a man of reasonable caution in the belief that the action taken was appropriate." (Internal citations and quotations omitted.) *State v. Blair*, 9th Dist. No. 24208, 2008-Ohio-6257, at ¶5. Finally, this Court has recognized the precedent established by the United States Supreme Court and the Supreme Court of Ohio that any violation of traffic law provides the reasonable suspicion required to make an investigatory stop of a vehicle. *Johnson* at ¶11, citing *Whren v. United States* (1996), 517 U.S. 806; *State v. Wilhelm* (1998), 81 Ohio St.3d 444; and *Dayton v. Erickson* (1996), 76 Ohio St.3d 3; see, also, *State v. Barbee*, 9th Dist. No. 07CA009183, 2008-Ohio-3587, at ¶9.

{¶8} However, under appropriate circumstances, a law enforcement official may be justified in approaching a vehicle to provide assistance, without needing any basis to suspect criminal activity. *State v. Norman* (1999), 136 Ohio App.3d 46, 54. "Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out

'community caretaking functions' to enhance public safety. The key to such permissible police action is the reasonableness required by the Fourth Amendment. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base her safety concerns." Id.

{¶9} Officer Robert Schmidt was the only witness to testify at the suppression hearing. A review of the transcript reveals that at approximately 7:30 p.m. on the evening of October 18, 2010, Officer Schmidt received a call from dispatch regarding an intoxicated female possibly in distress in the area of Second Street and Portage Trail in Cuyahoga Falls, Ohio. Officer Schmidt testified that dispatch informed him that "there were two intoxicated females in a vehicle entering [Cuyahoga Falls], and the passenger of the vehicle was concerned because the driver was going to [] kick her out of the car in the area of Second and Portage, and then there was an argument between the two individuals." Dispatch remained in contact with the passenger and informed Officer Schmidt that the vehicle was a tan Kia Spectra heading westbound on Portage Trail. Officer Schmidt was traveling eastbound on Portage Trail and, after the vehicle passed him going westbound, he turned around and attempted to get behind the vehicle. Officer Schmidt was able to catch up to the vehicle as it was stopped at a red light at the intersection of Portage Trial and State Road.

{¶10} As the vehicle proceeded to turn southbound onto State Road, Officer Schmidt ran the registration on the vehicle. Officer Schmidt testified that he observed two occupants in the vehicle but nothing else inside the vehicle caught his attention. Officer Schmidt observed the vehicle weave within its lane from the curb to the lane marker. Officer Schmidt testified that, "[i]t didn't cross the lane marker, but it did weave within the lane." Officer Schmidt testified that the vehicle was weaving within its lane despite the fact that the road was flat and contained

no potholes. Officer Schmidt also testified that he did not observe anything in the roadway which would require the vehicle to weave. The vehicle proceeded to turn westbound onto Valley Road. After Officer Schmidt observed the vehicle for approximately a block and a half, he pulled the vehicle over. Officer Schmidt testified that he concluded it was necessary to pull the vehicle over because "[t]he vehicle had weaved within the lane, and to check the well-being of the passenger who was the caller." When Officer Schmidt turned on his lights, the vehicle continued for approximately a block and then turned southbound and came to a stop on 25th Street. Officer Schmidt identified the driver of the vehicle as Randhan.

{¶11} On cross-examination, Officer Schmidt admitted that he did not receive clarification from dispatch as to whether the passenger's fear that she would be "kicked out" of the vehicle was to be interpreted as the driver becoming unwilling to transport the passenger, or the driver actually throwing the passenger out of a moving car. Officer Schmidt further testified that he did not observe any swinging, pushing, or struggle in the vehicle prior to initiating the stop. Officer Schmidt confirmed on cross-examination that it was his understanding that the 911 caller was also the passenger in the vehicle. Officer Schmidt also clarified that he had an idea of the vehicle's likely destination because dispatch had run the name of the passenger through its in-house computer and discovered the passenger lived on Valley Road.

{¶12} The trial court granted Randhan's motion to suppress. The trial court concluded that the totality of the circumstances did not provide reasonable suspicion to effectuate a stop as the passenger merely gave the description of the vehicle, the route of the vehicle, as well as a "nebulous statement about her feared removal from the vehicle that may have suggested some sort of altercation was occurring." The trial court also noted that Officer Schmidt was not able to confirm the reliability of the informant and that knowledge of the informant's intoxication would

actually cause the reliability to be lessened. The trial court further concluded that while Officer Schmidt was able to corroborate the description of the vehicle and its route, he was also able to "dispel" the notion that an altercation was occurring inside vehicle. The trial court also characterized the vehicle's weaving as a de minimis lane violation, if any, and concluded that there was "insufficient observation of a traffic law violation to warrant a stop." In its journal entry, the trial court questioned whether Officer Schmidt pursued the vehicle out of concern for an alleged altercation or whether it was because the passengers were intoxicated. The trial court went on to state it was "troubling that dispatch informed the officer that the driver and passenger were intoxicated" because it was unclear how dispatch reached that conclusion. Finally, the trial court expressed its opinion that, in light of the fact that Officer Schmidt did not observe a struggle, it was unclear whether he had reason to suspect that criminal activity was afoot.

{¶13} Viewing the totality of the circumstances as they would have been understood by a patrolman at the time of the stop, we conclude that Officer Schmidt had an objective justification to stop the vehicle to check on the safety of the passenger. Officer Schmidt's decision to pull the vehicle over was directly responsive to the message from dispatch that a passenger in a moving vehicle dialed 911 because she feared being kicked out of the vehicle. Dispatch specifically indicated that a tan Kia Spectra containing two women was traveling westbound on Portage Trail. Officer Schmidt was further informed by dispatch that both women in the vehicle were intoxicated and that the passenger feared that she would be kicked out of the vehicle. After identifying the vehicle traveling westbound on Portage Trail, Officer Schmidt pursued the vehicle and came to be positioned immediately behind it as it made a left turn onto State Road. At that time, Officer Schmidt observed the vehicle weaving within its lane despite the fact that the road was generally flat and there were no obstacles in the road that would

necessitate such weaving. Officer Schmidt then allowed the vehicle to proceed away from the main thoroughfare and into an area with less traffic prior to effectuating the stop. Regardless of whether Officer Schmidt observed a struggle within the vehicle, there was an objective justification to stop the vehicle based on the distress call and the fact the he observed the vehicle weaving. The fact that the vehicle was weaving was consistent with the report from dispatch that the women in the vehicle were intoxicated. Officer Schmidt specifically testified that he concluded it was necessary to pull the vehicle over because "[t]he vehicle had weaved within the lane, and to check the well-being of the passenger who was the caller." Officer Schmidt's concern for the safety of the passenger, as well as the safety of the general public, justified the stop. *Norman*, 136 Ohio App.3d at 54. Under these circumstances, there were reasonable, articulable facts upon which Officer Schmidt could base his decision to stop the vehicle.

{¶14} The City's second assignment of error is sustained. Because our resolution of the second assignment of error is dispositive of the issues raised in the City's first assignment of error, this Court declines to address the first assignment of error separately as it is rendered moot. See App.R. 12(A)(1)(c).

III.

{¶15} The City's second assignment of error is sustained. The City's first assignment of error is moot. The judgment of the Stow Municipal Court is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

GREGORY M. WARD, Attorney at Law, for Appellant.

THOMAS M. DICAUDO, Attorney at Law, for Appellee.