[Cite as *State v. Dixon*, 2012-Ohio-4428.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. Nos. 11CA0065-M |
|---|---|---|
| | | 11CA0087-M |
| Appellee | | |
| | | |
| v. | | |
| | | APPEAL FROM JUDGMENT |
| STEVEN M. DIXON | | ENTERED IN THE |
| | | COURT OF COMMON PLEAS |
| Appellant | | COUNTY OF MEDINA, OHIO |
| | | CASE No.   10-CR-0428 |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2012

CARR, Judge.

{¶1}    Appellant Steven Dixon appeals his conviction in the Medina County Court of Common Pleas.  This Court reverses.

I.

{¶2}    Dixon and a companion, Matthew Geiger, were returning to Ohio from a multi-day music festival in Tennessee, when a Medina County Sheriff's deputy stopped their car because of a nonfunctioning license plate light.  After noticing that the driver, Geiger, was acting very nervous, the deputy called for a canine unit from the Seville Police Department to respond to the scene.  After the dog allegedly alerted for the presence of drugs in the vehicle, several law enforcement officers searched the car.  Various pieces of unused drug paraphernalia were found in the car's interior, and a pouch containing mushrooms and pills was found in the car's air filter under the hood.  Dixon was indicted on one count of possession of N-Benzylpiperazine ("BZP"), a Schedule I controlled substance, in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the

second degree; and one count of possession of Psilocybin, a Schedule I controlled substance, in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree. Each count also carried a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04(A)(1). He pleaded not guilty to the charges.

{¶3} The case was scheduled for a jury trial. Dixon filed a demand for testimony by the person who prepared the laboratory report provided by the State during discovery.

{¶4} Dixon filed a motion to suppress in which he argued that there was no valid legal basis to search the car because the occupants did not give consent, the police did not have a warrant, and the occupants had not been placed under arrest which would have implicated the search incident to a lawful arrest exception to the warrant requirement. Four and a half months later, Dixon filed an amended motion to suppress, without objection by the State, in which he raised the following arguments: 1. Although he admitted that a non-illuminated license plate constitutes a traffic violation sufficient to justify a traffic stop, Dixon challenged the deputy's assertion that the license plate was not illuminated. 2. Although he conceded that an officer may further detain a car and driver if the officer has a reasonable suspicion of criminal activity beyond the scope of the initial stop, Dixon argued that neither Geiger nor he did or said anything which gave rise to such reasonable suspicion. Accordingly, he challenged his detention during the time it took for the canine unit to arrive. 3. Although he acknowledged that the use of a canine outside of a car to sniff for drugs does not constitute a search, in this case he challenged the existence of probable cause to search the car based on the lack of evidence establishing the canine's training and competence to detect drugs. 4. Dixon argued that the police failed to give him his *Miranda* warnings prior to any custodial interrogation. The trial court held a suppression hearing immediately prior to trial and denied the motion without enunciating its reasoning.

{¶5} The matter proceeded to trial. After both sides rested and the trial court had charged the jury, the State moved to amend the indictment as to the second drug possession charge to change the drug at issue from Psilocybin to Psilocyn. The trial court granted the motion to amend over Dixon's objection. The trial court then recharged the jury regarding all the charges. The jury found Dixon guilty of possession of BZP and possession of Psilocyn, but concluded that the funds seized by the police were not derived from either felony drug abuse offense. In addition, the jury found that Dixon possessed BZP in an amount equal to or exceeding five times the bulk amount but less than fifty times the bulk amount. The trial court sentenced Dixon to concurrent prison terms for an aggregate term of three years, all of which constituted a mandatory term. Dixon filed two appeals which this Court consolidated. He raised five assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN OVERRULING THE PORTION OF DIXON'S MOTION TO SUPPRESS CONTENDING THAT SERGEANT SCHMOLL HAD PROBABLE CAUSE TO SEARCH THE VEHICLE IN WHICH DIXON WAS A PASSENGER.

{¶6} Dixon argues that the trial court erred by denying his motion to suppress because law enforcement had no probable cause to search the car in which he was a passenger. This Court agrees.

{¶7} As an initial matter, this Court concludes that Dixon may challenge the propriety of the search of the car. A passenger seeking the suppression of evidence seized from a vehicle must demonstrate either that "(1) the police subjected him to an illegal seizure when he was a passenger in the vehicle; or (2) he possessed a legitimate expectation of privacy in the vehicle searched or the item seized." *State v. Redding*, 9th Dist. No. 10CA0018-M, 2010-Ohio-4286, ¶

9, citing *Brendlin v. California*, 551 U.S. 249, 256-258 (2007). Here, the car belonged to Dixon's father, so Dixon had a legitimate expectation of privacy in the family car he and his companion were using.

{¶8} This Court's standard of review is as follows:

> An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve questions of fact. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo.

(Emphasis omitted.) (Internal citations omitted.) *State v. Swan*, 9th Dist. No. 22939, 2006-Ohio-2692, ¶ 8. Moreover, "this Court reviews a probable cause determination de novo." *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984, ¶ 28, citing *State v. Salas*, 9th Dist. No. 21891, 2004-Ohio-6274, ¶ 17.

{¶9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit only unreasonable searches and seizures, not every search and seizure. Law enforcement may reasonably conduct a search that is based on probable cause. *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). In other words, there must be an indication of a "fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Anderson*, 9th Dist. No. 95CA006052, 1995 WL 734036 (Dec. 13, 1995), quoting *State v. Carlson*, 102 Ohio App.3d 585, 600 (9th Dist.1995), quoting *Illinois v. Gates*, 462 U.S. 213, 214 (1983).

{¶10} Dixon does not dispute that the initial stop of the vehicle based on a traffic violation was proper. Moreover, he does not dispute that, if law enforcement had probable cause to suspect criminal activity, a search of the car would have been proper pursuant to the

automobile exception to the warrant requirement. *Moore*, 90 Ohio St.3d at 51. It is well established that an officer has probable cause to search a lawfully detained vehicle after a properly trained drug dog has alerted to the odor of drugs from the vehicle. *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, ¶ 15 (9th Dist.); *see also State v. Barbee*, 9th Dist. No. 07CA009183, 2008-Ohio-3587, ¶ 18.

{¶11} Dixon argues that there was no probable cause for the search because the State failed to present evidence that the drug dog that conducted the sniff of the car was properly trained or otherwise competent to detect drugs. He expressly raised this issue in his amended motion to suppress, despite the State's claims on appeal that he failed to specifically challenge the dog's training or reliability in his motion.

{¶12} This Court has recognized that the training and reliability of the drug dog must be established to support a determination of probable cause to search. *State v. Calhoun*, 9th Dist. No. 94CA005824, 1995 WL 255929 (May 3, 1995). The State establishes a drug dog's training and reliability by presenting testimony by the dog's handler or trainer or through records evidencing the dog's training and/or certification. *Id.*, citing *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir.1994); *see also Barbee* at ¶ 20-21 (citing *State v. Nguyen*, 157 Ohio App.3d 482, 2044-Ohio-2879, ¶ 63 (6th Dist.), and applying the majority view adopted by the Sixth District Court of Appeals that "proof of the fact that a drug dog is properly trained and certified is the only evidence material to a determination that a particular dog is reliable."). This Court has applied the same analysis in other cases as well. *E.g., Anderson, supra*, and *State v. Ramirez*, 9th Dist. No. 04CA0024-M, 2004-Ohio-6541, ¶ 14-15. In the cases cited above, the reviewing courts concluded that probable cause was established after trainers or handlers testified regarding

the drug dog's training and/or certification or after presentation of certification of the dog's training or abilities. There is no such evidence in this case.

{¶13} Here, the State presented only the testimony of Deputy Scott Schmoll of the Medina County Sheriff's Department, who testified that he requested that Officer Prill of the Seville Police Department respond to the scene because "[h]e has a canine trained in narcotics detection." Officer Prill did not testify at the suppression hearing and no documentation was presented to establish that the dog that appeared on the scene was trained, certified, or otherwise competent to detect drugs. Deputy Schmoll did not testify that the dog that Officer Prill brought to conduct the drug sniff was trained or certified to detect drugs. Deputy Schmoll testified that he did not know how to recognize an alert by the dog on the scene and he admitted that he did not know how the dog had been trained. This Court concludes that there was no competent evidence to establish that the dog that conducted the drug sniff on Dixon's car was properly trained and competent to detect drugs. Accordingly, that this dog "alerted" to the driver's side of the car did not establish probable cause for the search of the car. Therefore, the trial court erred by denying Dixon's motion to suppress. Dixon's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FINDING THAT SERGEANT SCHMOLL DID NOT UNREASONABLY DETAIN DIXON AND GEIGER IN VIOLATION OF THE FOURTH AMENDMENT SO THAT THE DRUG SNIFF COULD BE ACCOMPLISHED.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING AN AMENDMENT TO COUNT TWO OF THE INDICTMENT AFTER CLOSING ARGUMENT.

## ASSIGNMENT OF ERROR V

THE JUDGMENT OF CONVICTION ON COUNT ONE OF THE INDICTMENT WAS LIKEWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} Based on our resolution of the first assignment of error, most of Dixon's remaining assignments of error have been rendered moot and we decline to address them. *See* App.R. 12(A)(1)(c).

{¶15} Regarding Dixon's challenge to the trial court's amendment of the second count in his indictment, we clarify our conclusion that the third assignment of error is moot. This Court has previously held that, even if the trial court erred in amending a criminal charge pursuant to Crim.R. 7(D), the defendant's retrial is not barred by the Double Jeopardy Clause. *Tallmadge v. Ritchie*, 34 Ohio App.3d 342, 344 (9th Dist.1986).

## ASSIGNMENT OF ERROR IV

THE JUDGMENT OF CONVICTION ON COUNT ONE OF THE INDICTMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶16} Dixon argues that his conviction for possession of BZP was not supported by sufficient evidence. This Court disagrees.

{¶17} As an initial matter, we conclude that our resolution of the first assignment of error does not render moot Dixon's challenge to the sufficiency of the evidence adduced at trial. The Ohio Supreme Court has "distinguish[ed] between appellate court reversals based solely upon insufficiency of the evidence and those based on ordinary 'trial errors.'" *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 18. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect a criminal defendant from multiple prosecutions for a single offense. Accordingly, notwithstanding some procedural defect by the trial court warranting reversal, the State remains

entitled to "one, and only one, full and fair opportunity" to prosecute the defendant in regard to a single offense. *Richardson v. United States*, 468 U.S. 317, 331 (1984). When a case is reversed on the basis of trial error, the Double Jeopardy Clause does not prohibit retrial "'where the evidence offered by the State and admitted by the trial court-whether erroneously or not-would have been sufficient to sustain a guilty verdict[.]'" *Brewer* at ¶ 17, quoting *Lockhart v. Nelson*, 488 U.S. 33, 35 (1988).

{¶18} The *Brewer* court recognized the corollary, however, that the State is not entitled to retry a criminal defendant after reversal for trial court error if the State failed in the first instance to present sufficient evidence. *Id.* at ¶ 18. Accordingly, a defendant's assigned error that the conviction is based on insufficient evidence is not moot under these circumstances. The Ohio Supreme Court emphasized, however, that the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, whether such evidence was properly admitted or not. *Id.* at ¶ 19. Regarding any prior decisions of this Court which reached a contrary conclusion, *Brewer* clarifies that a sufficiency argument cannot be rendered moot. *See, e.g., State v. Myers*, 9th Dist. No. 23508, 2007-Ohio-4134.

{¶19} This Court reviews the substance of Dixon's argument under the following standard of review.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway*, 9th Dist. No. 19752, 2001 WL 81257 (Jan. 31, 2001), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker*, 9th Dist. No. 20559, 2001 WL 1581570 (Dec. 12, 2001); *see, also*, *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶20} Dixon was convicted of possessing BZP, a Schedule I controlled substance, in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." The offense is a felony of the second degree if the drug involved "equals or exceeds five times the bulk amount but is less than fifty times the bulk amount." R.C. 2925.11(C)(1)(c). BZP is a Schedule I stimulant. R.C. 3719.43; 21 C.F.R. 1308.11(f)(2); *see also* R.C. 3719.41, Publisher's Note. "Bulk amount" for a Schedule I stimulant is satisfied by ten unit doses. R.C. 2925.01(D)(1)(c). "Unit dose" constitutes "an amount or unit of a compound, mixture, or preparation containing a controlled substance that is separately identifiable and in a form that indicates that it is the amount or unit by which the controlled substance is separately administered to or taken by an individual." R.C. 2925.01(E). Accordingly, possession of a minimum of 50 and up to 500 unit doses of BZP was necessary to demonstrate that the offense constituted a felony of the second degree.

{¶21} Dixon argues only that the State did not present sufficient evidence "with respect to the quantity of 'unit doses' containing BZP." He does not dispute that 106 pills were found in the air filter of the car. He argues merely that the State presented evidence that only 38 of the 106 pills contained BZP.

{¶22} At trial, Jennifer Acurio, a forensic scientist in the drug chemistry section of the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that she analyzed the

drugs underlying the charges in this case. She testified that a unit dose is a "separate unit inasmuch as a person would take" and that 5 times the bulk amount of BZP in this case would be 50 pills. Ms. Acurio explained that she separated the pills into groups of the same color, shade, and markings, which resulted in the following seven distinct groups: 5 orange pills, 1 orange pill, 5 blue pills, 31 blue pills, 1 purple pill, 63 purple pills, and broken pieces of purple pills. She performed both preliminary and confirming tests on all the pills she analyzed. She analyzed all 5 orange pills in the first group, the 1 orange pill in the second group, all 5 blue pills in the third group, 14 of the 31 blue pills in the fourth group, the 1 purple pill in the fifth group, and 19 of the 63 purple pills in the sixth group, all pursuant to BCI sampling procedures. All 45 pills tested were positive for BZP. Ms. Acurio testified that she then presumed that the remaining untested pills also contained BZP because the BCI sampling procedure accurately supports such a presumption. She averred in her affidavit appended to her report of findings that the tests she performed on the pills were scientifically accepted and performed with due caution in accordance with the established and accepted procedures of BCI.

{¶23} This Court held long ago that "[c]hemical analysis of a random sample of a quantity of drugs is enough to allow a reasonable inference that all of the tablets contained the same drug [], if no rebuttal is offered." *State v. Rush*, 9th Dist. Nos. 3809, 3818, 1985 WL 11030 (July 31, 1985), citing *State v. Mattox*, 13 Ohio App.3d 52, 53 (2d Dist.1983). We reaffirmed that holding more recently in *State v. Mathis*, 9th Dist. No. 23507, 2007-Ohio-2345, ¶ 12. Here, no rebuttal was offered. Accordingly, evidence that 45 of the 106 pills contained BZP provided a sufficient basis to infer that all 106 pills contained BZP. *See id.* Dixon's fourth assignment of error is overruled.

III.

{¶24} Dixon's fourth assignment of error is overruled. His first assignment of error is sustained. We decline to address the remaining assignments of error as they have been rendered moot. The judgment of the Medina County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
DICKINSON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JOSEPH F. SALZGEBER, JR. Attorney at Law, for Appellant.

BRENT L. ENGLISH, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.