[Cite as *State v. Coleman*, 2018-Ohio-1923.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CHARLES D. COLEMAN

    Appellant

C.A. Nos.     28640
                28641

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   CR 2016 10 3554 (B)
              CR 2016 05 1716 (B)

DECISION AND JOURNAL ENTRY

Dated: May 16, 2018

---

TEODOSIO, Judge.

{¶1} Appellant, Charles D. Coleman, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms, but remands the matter for the trial court to issue a nunc pro tunc judgment entry.

I.

{¶2} In May of 2016, R.M. wanted to trade food stamps for heroin, so a female acquaintance connected him to an individual who was willing to facilitate an exchange. Mr. Coleman and two others ("Terrance" and "Anthony") arrived at R.M.'s residence and forced him go with them to a nearby Save-a-Lot store while they used his food stamp card. The men all traveled to the store together in one vehicle, and two of them went inside to buy food with R.M.'s food stamp card. Afterward, they drove to a turnaround at the end of a road and all three men physically attacked R.M. He managed to escape and locate a nearby Stow police officer

that the men had just recently passed on the road. The officer soon located and stopped the vehicle as it came back down the road from the turnaround and eventually arrested all four men, including R.M. Mr. Coleman was indicted on a felony charge of illegal use of food stamps or WIC program benefits as well as misdemeanor assault.

{¶3} In October of 2016, an Akron police officer was dispatched to investigate a suspicious vehicle parked in the entrance to a parking lot with three men inside. Terrance was in the driver's seat, Anthony was the front passenger seat, and Mr. Coleman was in the rear seat, directly behind the driver. Anthony was arrested on an active warrant and he admitted that there was a gun under his seat. After Terrance and Mr. Coleman were removed from the vehicle, officers located Anthony's gun as well as another loaded gun stashed deep down in the map pocket behind the driver's seat. Mr. Coleman was indicted on a felony charge of improperly handling firearms in a motor vehicle.

{¶4} Mr. Coleman waived his right to a jury trial and both matters proceeded to a bench trial. The trial court found him guilty of all three offenses and sentenced him to two years of community control.

{¶5} Mr. Coleman now appeals from his convictions and raises two assignments of error for this Court's review. Although he appealed both of his criminal cases separately, this Court consolidated the two appeals, as both cases were tried together in the trial court.

II.

{¶6} Before addressing Mr. Coleman's assignments of error, we must first address an error brought to this Court's attention by the State, regarding the trial court's judgment entry and Mr. Coleman's conviction for improper handling. Mr. Coleman was convicted of improperly handling firearms in a motor vehicle under R.C. 2923.16(B), which is undeniably a felony of the

fourth degree. *See* R.C. 2923.16(I) ("A violation of division (B) of this section is a felony of the fourth degree"). A review of the record reveals that the charge was properly indicted as a felony of the fourth degree and that Mr. Coleman was found guilty at trial of a felony of the fourth degree. During his sentencing hearing, the trial court properly sentenced Mr. Coleman for a felony of the fourth degree. However, the court's judgment entry contains a clerical error as it mistakenly refers to the offense as a felony of the *fifth* degree. As it is clear from the record that this is simply a clerical error, we must remand the matter for the trial court to issue a nunc pro tunc judgment entry to reflect that Mr. Coleman was found guilty of improperly handling firearms in a motor vehicle under R.C. 2923.16(B), a felony of the *fourth* degree. *See State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476, ¶ 21.

{¶7} We now turn to the merits of Mr. Coleman's assignments of error.

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED AS A MATTER OF LAW AND DENIED THE DEFENDANT HIS CONSTITUTIONAL DUE PROCESS RIGHTS WHEN IT FAILED TO SUSTAIN THE DEFENDANT'S CRIM.R. 29 MOTIONS FOR ACQUITTAL BASED ON INSUFFICIENCY OF THE EVIDENCE

{¶8} In his first assignment of error, Mr. Coleman argues that his convictions are based on insufficient evidence and the trial court erred in not granting his Crim.R. 29 motion for acquittal. We disagree.

{¶9} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the

case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶10} Mr. Coleman was convicted of illegal use of food stamps or WIC program benefits under R.C. 2913.46(B), which states:

> No individual shall knowingly possess, buy, sell, use, alter, accept, or transfer supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefit in any manner not authorized by the Food and Nutrition Act of 2008 (7 U.S.C. 2011 et seq.) or section 17 of the "Child Nutrition Act of 1966," 80 Stat. 885, 42 U.S.C. 1786, as amended.

"A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶11} Mr. Coleman concedes that the parties stipulated prior to trial that buying, selling, or transferring food stamps is not authorized by the Food and Nutrition Act of 2008. He argues instead that the State failed to prove the requisite mens rea element of "knowingly" for the offense. He directs us to R.M.'s testimony in which he referred to the three men only by numbers and claims that R.M. could not recall which individual sat in which seat. He further directs us to Sergeant Jeffrey Breznak's testimony in which he stated his investigation indicated that Mr. Coleman never went into the store and that R.M. arranged the exchange with Terrance.

{¶12} During his testimony at trial, R.M. referred to the men by their seating position in the car. The driver was number 1, the front seat passenger was number 2, and the rear seat passenger sitting directly behind the driver was number 3. R.M. was seated behind the front seat passenger as number 4. When asked to identify person number 3, R.M. identified Mr. Coleman in court. When asked who went into the store, R.M. testified, "Number 3 and number 2." When later asked where Mr. Coleman was at after two of the men went into the store, R.M. testified, "He came out of the Save-a-Lot with the guy that was in the front, which would be passenger number 2." He was further asked to clarify if Mr. Coleman went into the store and he replied, "That's correct." On cross-examination, R.M. testified, "From what I recall, I think [Mr. Coleman] was in number 3 seat[,]" but he admitted that he was not sure. On re-direct examination, R.M. testified that numbers 1 and 3 looked alike. He also testified that the food stamp arrangement was discussed with all three of the men in the vehicle and stated, "[t]hey all talked about what they wanted and what to get. This and that." He testified that they all seemed to know what was going on, and none of them seemed surprised during the discussion.

{¶13} Sergeant Breznak testified that when he stopped the vehicle, the three men all initially denied knowing R.M. The men were all talking over one another, so Mr. Coleman assumed the role of the spokesman for the group. The sergeant testified that Mr. Coleman admitted, "Yes, we had an arrangement where $40 was going to be paid for $90 in groceries using [R.M.'s] debit card, the food stamps debit card." Officer Joseph Hepler testified that when he conducted a tow inventory of the vehicle, a number of Save-a-Lot bags containing groceries priced at over $93.00 were discovered in the trunk.

{¶14} After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented

sufficient evidence, if believed, from which a rational trier of fact could have concluded beyond a reasonable doubt that Mr. Coleman knowingly committed the offense of illegal use of food stamps or WIC program benefits. The testimony at trial established that Mr. Coleman and two others were involved in a deal to exchange money or heroin for use of R.M.'s food stamp card. R.M. testified that the men took him to the store and all three, including Mr. Coleman, discussed what items they wanted to purchase with the card. Mr. Coleman was not surprised at the content of those conversations, but instead was involved in the illicit plan. R.M. also testified that two of the men, including Mr. Coleman, went into the store together to use his card and later emerged with bags of groceries, which were later found in the trunk of the car. Mr. Coleman even admitted his involvement in the exchange of cash for use of R.M.'s food stamp card to Sergeant Breznak.

{¶15} Mr. Coleman was also convicted of assault under R.C. 2903.13(A), which states: "No person shall knowingly cause or attempt to cause physical harm to another * * *." Physical harm to a person means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶16} Mr. Coleman argues that the State failed to introduce sufficient evidence of assault because R.M. had visible injuries from a prior incident, but no visible injuries from this particular incident, and R.M. testified that the punches he received did not hurt.

{¶17} We find no merit in Mr. Coleman's sufficiency arguments as to his conviction for assault. First, the plain language of R.C. 2903.13(A) prohibits not only actually causing physical harm but also attempting to cause physical harm. *State v. Stecz*, 9th Dist. Medina No. 1652, 1988 Ohio App. LEXIS 2444, *3. Second, regardless of R.M.'s testimony that the punches did not hurt him, R.C. 2901.01(A)(3) clearly defines physical harm as any injury *regardless of its*

*gravity*. Consequently, "[a]n assault may occur even when there is no outward or physical manifestation of pain or injury." *State v. Collier*, 9th Dist. Lorain No. 07CA009115, 2008-Ohio-826, ¶ 14. *See also State v. Lohr*, 9th Dist. Lorain No. 03CA008265, 2004-Ohio-1609, ¶ 6 ("There is no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm").

{¶18} Nevertheless, R.M. testified that he was physically assaulted by all three men, including Mr. Coleman. He testified that the men drove him to a turnaround at the end of a road and the driver then switched spots with the rear seat passenger. He testified that all three men then attacked him:

> They proceeded to attack me. * * * The driver started swinging from the front seat towards the back. The rear [passenger] * * * started swinging at me and got me in my shoulder. And at the time 1 and 3 were attacking me in the vehicle, then number 2 got out of the vehicle and had opened my door and swung at my face; he caught my chin.

R.M. identified Mr. Coleman in court as the individual in the driver's seat during the attack. When specifically asked if the driver turned around and hit him, R.M. testified, "That is correct." When later asked if he was certain that Mr. Coleman hit him, he replied, "Yes." On re-direct examination, when he was asked again if he was positive that both numbers 1 and 3 hit him, he replied, "100 percent." Sergeant Breznak testified that R.M. approached him yelling about being robbed by three men in which "the three started beating upon him." He testified that R.M. was quite clear in telling the officer that "all three occupants were punching him."

{¶19} After reviewing the evidence presented in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence, if believed, from which a rational trier of fact could have concluded that the elements

of assault were proven beyond a reasonable doubt. The testimony at trial established that the three men, including Mr. Coleman, all physically attacked and punched R.M.

{¶20} Mr. Coleman was also convicted of improperly handling firearms in a motor vehicle under R.C. 2923.16(B), which states: "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

{¶21} Mr. Coleman argues that the State did not present sufficient evidence to demonstrate that (1) he did not have a concealed handgun license or (2) that he "knowingly" transported or possessed the firearm. He argues that the record is devoid of any evidence that he touched the firearm.

{¶22} First, we find no merit in Mr. Coleman's claim that the State failed to present sufficient evidence that he did not have a concealed handgun license. The lack of a concealed handgun license is not an essential element of the offense of improperly handling firearms in a motor vehicle under R.C. 2923.16(B). While we are cognizant of the fact that R.C. 2923.16(F)(5) provides an exemption from being charged under R.C. 2923.16(B)-(C) for those individuals who have a concealed handgun license and are not knowingly in specific areas such as police stations, schools, or courthouses, it would have been incumbent upon Mr. Coleman, not the State, to establish any such affirmative defense at the trial court level. *See State v. Meyers*, 11th Dist. Lake Nos. 2013-L-042 & 2013-L-043, 2014-Ohio-1357, ¶ 38-43 (holding that if the exemption provisions of R.C. 2923.16(F)(5) apply, it is the defendant's burden to establish that he has a concealed handgun license, thereby rendering R.C. 2923.16(C) inapplicable to him).

{¶23} As to Mr. Coleman's claim that the State did not present sufficient evidence that he knowingly transported, possessed, or touched the firearm, we disagree. Although Mr.

Coleman argues that there is no evidence that he physically touched the firearm, the State presented evidence at trial to establish that he constructively possessed it. "Possess" or "possession" means having control over an object, but may not be inferred solely from mere access to the object through ownership or occupation of the premises upon which the object is found. R.C. 2925.01(K). A person may knowingly possess an object through either actual or constructive possession. *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Thus, the crucial issue is not whether the accused had actual physical contact with the object, but whether the accused was capable of exercising dominion and control over it. *State v. Delaney*, 9th Dist. Summit No. 28663, 2018-Ohio-727, ¶ 8. Dominion and control may be proved through circumstantial evidence. *State v. Rucker*, 9th Dist. Summit No. 25081, 2010-Ohio-3005, ¶ 30. There are many types of evidence or factors that on their own do not establish constructive possession, but when viewed together as a whole can be used as circumstantial evidence to establish constructive possession. *State v. Owens*, 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23. "For instance, 'readily usable drugs or other contraband in close proximity to a defendant may constitute sufficient and direct circumstantial evidence to support a finding of constructive possession.'" *Id.*, quoting *State v. Varner*, 9th Dist. Summit No. 21056, 2003-Ohio-719, ¶ 19.

{¶24} At trial, Officer Sarah Wolfe testified that she responded to a dispatch call regarding a suspicious vehicle. She observed a parked vehicle with three men inside at the entrance to the parking lot of an apartment complex on Massillon Road. Terrance was in the driver's seat and Mr. Coleman was in the rear seat, sitting directly behind the driver. Officer

Wolfe soon discovered that the front seat passenger ("Anthony") had an active warrant for his arrest. Around that time, Captain Brian Simcox, Officer Jacob Fangmann, and Officer Paul Barns all arrived at the scene. Several of the officers testified that when Anthony was removed from the vehicle he openly admitted that there was a gun under his seat.

{¶25} Captain Simcox testified that as the police prepared to remove the other two men from the vehicle, Mr. Coleman was extremely nervous, physically shaking, chattering non-stop, and "[a]bsolutely could not calm himself * * *." He testified that Mr. Coleman was making statements such as, "Can I go? I want to leave. Can I get out of the car? * * * Man, I just want to go home." He further testified that "[Mr. Coleman] told [him] multiple times that [he] needed a search warrant to search that car." When Mr. Coleman was informed that the car would not be searched with people still in it, he told the captain, "Fine. Get me the f**k out of this car." Officer Barns testified that Mr. Coleman was "knocking around" and moving around a little bit. The officer felt something was not right about Mr. Coleman, compared to how Terrance was acting. Captain Simcox testified that once Mr. Coleman was removed from the car he said, "I want to leave. Can I leave the scene? * * * May I leave? Am I free to go?"

{¶26} During the search of the vehicle, a loaded gun was located under the front passenger seat where Anthony had been sitting. Captain Simcox then discovered a second loaded gun inside the back pocket of the driver's seat, located directly in front of where Mr. Coleman had been sitting. Based on the gun's position in the pocket, the captain testified that the only way Anthony could have placed it there was if he held the weapon by the barrel and placed it into the pocket while pointing the loaded gun at himself. Captain Simcox testified that, based on his training and experience, that is not the way people handle weapons. He also testified that it would have been impossible for Terrance to put the gun in there. Officer Barns

testified that Terrance told the police during the search, "You ain't going to find anything." Captain Simcox testified that Terrance was adamant when he said that the second gun did not belong to him. Based on the lack of any noticeable furtive movements by anyone in the car, as indicated by Officer Wolfe, and the proximity of the gun to Mr. Coleman, Captain Simcox testified that "the only person that could have put it there was [Mr.] Coleman."

{¶27} After reviewing the evidence presented in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence, if believed, from which a rational trier of fact could have concluded beyond a reasonable doubt that Mr. Coleman knowingly and constructively possessed the firearm. The weapon was located in a pocket that was in close proximity and directly in front of Mr. Coleman, and testimony at trial established that the other two individuals could not have placed the weapon there and no furtive movements were observed. Anthony openly admitted to the one gun that was his and Terrance denied ownership of the gun found near Mr. Coleman. Moreover, Mr. Coleman's demeanor and actions demonstrated that he was extremely nervous and agitated while near the gun and repeatedly asked to get out of the car, leave the scene, and go home. He also told the police that they needed a warrant to search the car.

{¶28} We conclude that Mr. Coleman's sufficiency of the evidence arguments are without merit. Accordingly, Mr. Coleman's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶29} In his second assignment of error, Mr. Coleman argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶30} This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶31} Initially, we note that Mr. Coleman's manifest weight arguments under this assignment of error are interlaced with various sufficiency arguments claiming the State failed to prove every element of every offense beyond a reasonable doubt and failed to present additional, speculative evidence including videos, text messages, or recorded statements that could have aided the trier of fact. However, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence." *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. "An argument that the State failed to prove one of the elements of a crime is one sounding in sufficiency, not weight." *Id.* As Mr. Coleman's stated assignment of error presents this Court with strictly a weight challenge, and because that is the only standard of review that he sets forth under this assignment of error, we will limit our

review to his manifest weight arguments alone. *See State v. Lewis*, 9th Dist. Summit No. 28064, 2017-Ohio-2747, ¶ 14.

{¶32} Mr. Coleman argues that R.M.'s testimony was inconsistent with, and largely contradictory to, Sergeant Breznak's testimony. Furthermore, because R.M. was a co-defendant in this case, his testimony was self-serving and he "had ulterior motives to change his prior statements to police to inconsistent statements at [Mr.] Coleman's trial." Mr. Coleman claims that, on multiple occasions, R.M. lied while testifying at trial and while speaking to Sergeant Breznak at the scene. He further claims that anyone could have placed the gun in the seat pocket at any time prior to the moment police arrived, the gun was found within Anthony's "lunge" area, and bullets were found in the trunk indicating the gun belonged to Terrance.

{¶33} After a review of the evidence presented at trial, we cannot say that the trial court's verdicts were against the manifest weight of the evidence. The trial court was indeed presented with various snippets of conflicting testimony at trial including whether the illicit deal involved exchanging food stamps for money or heroin, whether Mr. Coleman physically purchased the groceries or remained in the car with R.M. during the purchase, whether Mr. Coleman was in the driver's seat or the rear seat when he assaulted R.M., whether Mr. Coleman and another one of the men looked alike, whether it was R.M. or the three other men that handed Sergeant Breznak the food stamp card, and whether the men's vehicle was green or white. But, "'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In sifting through conflicting evidence presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness. *See Haydon* at ¶ 28. The trial court was best

able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30.

{¶34} Here, the trial court clearly chose to believe R.M.'s testimony that Mr. Coleman knowingly used the food stamp card and later physically assaulted R.M. The court also chose to believe police officer testimony that neither Terrance nor Anthony could have placed the gun where it was ultimately found, especially in light of the position in which it was found. The discovery of extra ammunition in the trunk of the car and any speculation of actual ownership of the gun does not undermine the trial court's determination that Mr. Coleman constructively possessed the gun that was located directly in front of him. After reviewing the evidence presented in this case, we cannot conclude that the trial court, in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Coleman has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶35} Accordingly, Mr. Coleman's second assignment of error is overruled.

III.

{¶36} Mr. Coleman's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

KANI HARVEY HIGHTOWER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.