[Cite as *State v. Webb*, 2018-Ohio-4199.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 28437 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ERVIN G. WEBB | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2016 01 0294 (C) |

DECISION AND JOURNAL ENTRY

Dated: October 17, 2018

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Ervin Webb, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} After the Summit County Drug Unit received a tip that a box containing methamphetamine was being shipped to Akron, its officers intercepted the box at a UPS facility. A drug dog alerted to the box, and officers quickly secured a warrant to search inside it. Inside the box, they found more than 160 grams of methamphetamine. They then resealed the box and arranged for a controlled delivery to its ultimate destination.

{¶3} The box was addressed to a residence in Akron. While an officer wearing a UPS uniform delivered it, others maintained surveillance. No one retrieved the box when the delivery took place, but, about an hour later, two residents left the house by car. Sixteen minutes later, a second car, driven by Mr. Webb, arrived. Mr. Webb parked in the driveway, exited his car,

retrieved the box, returned to his car, and began to drive away. Officers then stopped his car and arrested him.

{¶4} Mr. Webb was indicted on one count of aggravated possession of methamphetamine in an amount that was equal to or more than 50 times the bulk amount, but less than 100 times the bulk amount. A jury trial commenced and, at its conclusion, the jury found Mr. Webb guilty. The court sentenced him to three years in prison.

{¶5} Mr. Webb now appeals from his conviction and raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR NO. 1**

APPELLANT'S CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS IS UNCONSTITUTIONAL AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEEN AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION[.]

{¶6} In his first assignment of error, Mr. Webb argues that the State failed to prove its case beyond a reasonable doubt. Though he cites both the sufficiency and manifest weight standards in his brief and captions his assignment of error as a challenge to the weight of the evidence, his argument sounds only in sufficiency. *See State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20 ("[S]ufficiency and manifest weight are two separate, legally distinct arguments."). That is because he has not challenged any of the State's evidence as "unreliable or lacking credibility." *State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. His argument is strictly that the State failed to prove that he possessed the requisite mens rea (i.e., that he acted knowingly). *See State v. Kuruc*, 9th Dist. Medina No. 15CA0088-M, 2017-Ohio-4112, ¶ 35 (sufficiency tests the adequacy of evidence, not its persuasiveness). This

Court, therefore, limits its review to that issue. Upon review, this Court rejects Mr. Webb's argument.

{¶7} Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶8} "No person shall knowingly obtain, possess, or use a controlled substance * * *." R.C. 2925.11(A). If a person possesses a schedule I or II controlled substance in an amount that "equals or exceeds fifty times the bulk amount but is less than one hundred times the bulk amount," the person commits aggravated possession. R.C. 2925.11(C)(1)(d). The General Assembly has classified methamphetamine as a schedule II controlled substance. R.C. 3719.41, Schedule II(C)(2).

{¶9} "A person may knowingly possess an object through either actual or constructive possession." *State v. Coleman*, 9th Dist. Summit Nos. 28640, 28641, 2018-Ohio-1923, ¶ 23. "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of [his] control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(F)(1). *Accord State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16, quoting *State v. Hankerson*, 70 Ohio St.3d 87 (1982), syllabus ("The courts

have defined constructive possession as 'knowingly exercising dominion and control over an object * * *' or knowledge of the presence of the object.").

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). "[W]hether a person * * * knowingly possessed, obtained, or used a controlled substance is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998). "Circumstantial evidence is itself sufficient to establish dominion and control over the controlled substance." *Hilton* at ¶ 16.

{¶10} Mr. Webb does not dispute that he was arrested while in possession of a box containing more than 160 grams of methamphetamine. Instead, he argues that he did not knowingly possess the drug because he did not know what was inside the box he retrieved. He argues that there was no evidence tending to show that he possessed that knowledge or that he specifically knew the box contained between 50 and 100 times the bulk amount of the drug. Consequently, this Court limits its review to the foregoing issues.

{¶11} Detective Nicholas Gray, a member of the Summit County Drug Unit, testified that his unit received a tip about a box of methamphetamine being shipped from Arizona to Akron. The tip included a UPS tracking number for the box, so he and his colleague went to the UPS warehouse to locate it. Once they confirmed that the box contained methamphetamine, they resealed it and arranged for a controlled delivery. The box was addressed to an "Antonio Morales" at a residence in Akron, but Detective Gray testified that it is extremely common for

fake names to be employed when illegal narcotics are being shipped. He confirmed that only a man named Octavio Juarez and a woman named Jennifer Scott lived at the Akron address.

{¶12} Detective Gray testified that an officer disguised as a deliveryman delivered the box to the residence at 10:23 a.m. Though the officer knocked and rang the bell, no one retrieved the package. The officers conducting surveillance watched until 11:21 a.m., when Mr. Juarez and Ms. Scott came out of the house and left in their car without retrieving the package. Sixteen minutes later, Mr. Webb arrived in his own car, parked in the driveway, and retrieved the package. As he drove away, officers stopped him.

{¶13} Detective Robert Scalise interviewed Mr. Webb at the scene. During the interview, Mr. Webb denied that he had knowledge of the contents of the box and insisted that he had simply agreed to retrieve it for his friend, Mr. Juarez. He indicated that he had met Mr. Juarez in a parking lot and had agreed to drive to his house, pick up the box, and take it to his own home to await further instructions. He denied that he was involved in the drug trade, but acknowledged that he had sold methamphetamine for Mr. Juarez in the past. Further, when quickly scrolling through Mr. Webb's phone messages, the police found a text from Mr. Webb to Mr. Juarez, asking Mr. Juarez to call him and Mr. Juarez' brother because the latter was in need of "an ounce." Detective Scalise confirmed that drug dealers commonly use middlemen to take certain actions in aid of their illicit enterprises. When asked during his interview, Mr. Webb was able to offer a reasonable estimate for the street value of an ounce of methamphetamine.

{¶14} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Webb knowingly possessed methamphetamine. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Mr. Webb knew that Mr. Juarez was a drug dealer, given that he had sold

methamphetamine for him in the past. He had at least one message to Mr. Juarez stored on his phone and that message concerned the sale of narcotics. Moreover, there was evidence that Mr. Webb arrived at Mr. Juarez' house only 16 minutes after Mr. Juarez had left and that the box he agreed to retrieve and take home was addressed to someone else entirely. Given the short timeframe that elapsed between Mr. Juarez' departure and Mr. Webb's arrival, Mr. Webb's previous dealings with Mr. Juarez, and his instructions to take and keep a box that had been delivered to Mr. Juarez but was addressed to someone else, the jury reasonably could have determined that he knew the box contained a controlled substance. *See Teamer*, 82 Ohio St.3d at 492. To the extent Mr. Webb asserts that there was no evidence he knew how much methamphetamine the box contained, "'[k]nowledge of the bulk amount of a controlled substance is not an element of an offense under R.C. [2925.11(A)].'" *State v. Pulizzi*, 9th Dist. Summit No. 17797, 1997 Ohio App. LEXIS 56, *11 (Jan. 15, 1997), quoting *State v. Darby*, 11th Dist. Portage No. 93-P-0117, 1995 Ohio App. LEXIS 1087, *5 (Mar. 24, 1995). The State only needed to prove that Mr. Webb knowingly possessed a controlled substance. *See* R.C. 2925.11(A). Because the State presented circumstantial evidence from which the jury reasonably could have inferred that Mr. Webb acted knowingly, his argument to the contrary lacks merit. *See Hilton*, 2004-Ohio-1418, at ¶ 16. As such, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION
FOR ACQUITTAL.

{¶15} In his second assignment of error, Mr. Webb argues that the trial court erred when it denied his motion for acquittal. He once again contends that the State failed to prove mens rea and simply incorporates by reference his sufficiency argument. "'[This Court] review[s] a denial

of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Because this Court has already determined that the State presented sufficient evidence in support of Mr. Webb's conviction and he has not offered any additional arguments for review, this Court likewise rejects his assertion that the trial court erred by denying his motion for acquittal. His second assignment of error is overruled.

## III.

{¶16} Mr. Webb's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ADAM VANHO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant
Prosecuting Attorney, for Appellee.