**[Cite as *State v. Jones*, 2021-Ohio-1050.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

DANIEL LEE JONES

    Appellant

C.A. No.     29706

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 19 01 0111

DECISION AND JOURNAL ENTRY

Dated: March 31, 2021

---

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Daniel Jones, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} One evening in September 2018, a concerned citizen reported seeing a roadside mattress fire on South Van Buren Road in New Franklin. The firefighters who responded to the scene discovered a woman's body lying on top of the burning mattress and carefully extinguished the flames. Several items were found alongside the victim, including a cell phone, a tablet, and a Garmin GPS device. Additionally, officers learned that a passing motorist had seen a solitary male pulling a mattress from the back of a vehicle shortly before the fire started. An autopsy was performed, and it was determined that the victim had died from blunt force trauma to the head and neck with mixed asphyxial mechanisms (i.e., choking and smothering). Authorities were quickly able to identify the victim as K.B.

{¶3} About twelve hours after K.B.'s body was discovered, the Akron Police Department recovered an abandoned vehicle from an Akron school parking lot. The vehicle did not appear to have been broken into or hotwired, but its front passenger's seat had fire damage and its interior was sooty. The vehicle was towed to an impound lot because it was not immediately connected with the New Franklin fire. Later that same day, Mr. Jones' girlfriend contacted the Akron Police Department and reported that her vehicle had been stolen sometime during the night. An officer spoke with her and Mr. Jones at their apartment and informed them that the vehicle had been found at a nearby school. Both Mr. Jones and his girlfriend maintained that the car had been stolen. Both indicated that they had parked it outside their apartment the previous evening and had not seen it since.

{¶4} Forensic scientists tested vaginal swabs taken from K.B. during her autopsy. They also tested cuttings taken from paper towels that were found wrapped around her head at the scene. Both tests uncovered male DNA and that DNA profile led the New Franklin Police Department to Mr. Jones, as his profile was consistent with the profile scientists had uncovered. New Franklin detectives began investigating Mr. Jones and learned that he shared an apartment with his girlfriend. They also learned that the girlfriend had reported her vehicle stolen, that the alleged theft had occurred the night of the murder, that the vehicle had been located, and that it had sustained fire damage.

{¶5} By the time New Franklin detectives discovered the possible connection between the girlfriend's vehicle and K.B.'s murder, the girlfriend had turned the vehicle over to her insurance company. Detectives were able to recover the vehicle from the insurance company's lot and have it transferred to their station for processing. Upon inspection, blood was found on the front passenger's seat. Subsequent testing confirmed that the blood belonged to K.B.

{¶6}   A warrant was issued for Mr. Jones' arrest, and the police obtained his and his girlfriend's cell phone records.  The records showed that Mr. Jones had called his girlfriend on the evening of the murder at a time when both claimed to have been at home for the evening.  The records also showed that, during that call, their phones had relied on two different cell towers.  The girlfriend's phone had connected with a cell tower that serviced the area encompassing their apartment.  Meanwhile, Mr. Jones' phone had connected with a tower that serviced the area where police found the girlfriend's vehicle the next morning.  The school parking lot where the vehicle was found was located less than a mile from their apartment.

{¶7}   A grand jury indicted Mr. Jones on one count of murder, one count of felony murder, two counts of tampering with evidence, and one count of gross abuse of a corpse. Following the State's presentation of its case-in-chief at trial, Mr. Jones took the stand and admitted for the first time that he had killed K.B.  He indicated that they had taken drugs together, they had gotten into an argument, they began hitting one another, and she died after he placed her in a chokehold.  The trial court agreed to instruct the jury on the lesser-included offenses of voluntary and involuntary manslaughter, but the jury found Mr. Jones guilty on each of his original charges.  The court determined that his murder, felony murder, and felonious assault counts were allied offenses of similar import, and the State elected to have him sentenced on the murder count. The court sentenced Mr. Jones to a total of nineteen years to life in prison.

{¶8}   Mr. Jones now appeals from his convictions and raises four assignments of error for review.  For ease of analysis, this Court reorders two of his assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 2**

DANIEL JONES WAS DENIED HIS RIGHTS TO DUE PROCESS AND
CONFRONTATION GUARANTEED BY AMENDMENTS V, VI, AND XIV TO

THE U.S. CONSTITUTION AND ART. 1, SECTIONS 1, 10, AND 16 OF THE OHIO CONSTITUTION THROUGH THE PLAIN ERROR INTRODUCTION OF UNQUALIFIED EXPERT TESTIMONY.

{¶9} In his second assignment of error, Mr. Jones argues that the trial court committed plain error when it allowed the medical examiner to testify as to K.B.'s cause of death in the absence of a proper foundation. He argues that the admission of her testimony violated his rights under the Due Process Clause and the Confrontation Clause. For the following reasons, this Court rejects his argument.

{¶10} Crim.R. 52(B) permits this Court to notice plain errors or defects that affected a substantial right in the absence of an objection in the trial court. Plain error exists only where there is a deviation from a legal rule, that is obvious, and that affected the appellant's substantial rights to the extent that it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶11} Dr. Lisa Kohler, the Chief Medical Examiner for Summit County, testified about the results of K.B.'s autopsy and the cause and manner of her death. Dr. Kohler did not personally perform K.B.'s autopsy. One of her colleagues was assigned K.B.'s case, conducted the autopsy, and generated an autopsy report. Dr. Kohler testified that she reviewed and co-signed the autopsy report in her role as Chief Medical Examiner. She also testified that the autopsy report was one of the business records routinely kept at her office. Dr. Kohler testified that she had performed over 3,500 autopsies and described the process of an autopsy in detail. She then testified about the specifics of K.B.'s autopsy, as documented in the autopsy report, and offered several opinions about the cause of K.B.'s death.

{¶12} Mr. Jones argues that Dr. Kohler should not have been permitted to read opinions from the autopsy report or validate its conclusions. He notes that the State never moved to qualify her as an expert witness. While she described her qualifications in general, Mr. Jones argues, she failed to explain the specifics of her supervisory role or what authority she had, if any, to oversee the examiner who conducted K.B.'s autopsy. According to Mr. Jones, Dr. Kohler did not testify that K.B.'s autopsy followed necessary protocols or that she conducted an independent review of the pictures, slides, and specimens collected during the autopsy. He argues that it was error for the court to admit her testimony absent any showing that she was qualified to speak to the results of K.B.'s autopsy. Additionally, he argues that the admission of her testimony violated his rights under the Confrontation Clause because it deprived him of the ability to question the examiner who completed the autopsy. Because Dr. Kohler's testimony was the only evidence the State presented to establish cause of death, Mr. Jones argues, he sustained prejudice as a result of its admission.

{¶13} Initially, this Court notes that Mr. Jones' brief contains two references to a stipulation having been made at trial. The procedural history portion of his brief includes a statement that "[t]rial counsel stipulated to the [autopsy] report * * *." Meanwhile, the argument portion of his first assignment of error includes a statement that "[t]rial counsel stipulated to the autopsy report and [Dr.] Kohler's testimony." This Court is mindful that a defendant, by stipulation, may waive both his ability to contest the admission of evidence and the right of confrontation. *State v. Gibbs*, 9th Dist. Lorain No. 17CA011116, 2019-Ohio-4215, ¶ 11. Even so, no stipulation appears in this Court's record. Mr. Jones has neither provided a record citation for a stipulation, nor outlined the exact nature of that stipulation. Moreover, the State has refrained from commenting on the existence of any stipulation in its responsive brief. Under these particular

facts and circumstances, this Court declines to apply the doctrine of waiver. Instead, out of an abundance of caution, this Court will consider Mr. Jones' argument on its merits.

{¶14} "The Confrontation Clause guarantees a criminal defendant the right 'to be confronted with the witnesses against him[]' * * * [and] bars the admission of 'testimonial' hearsay statements." *State v. Myers*, 9th Dist. Wayne No. 19AP0045, 2020-Ohio-6792, ¶ 13, quoting the Sixth Amendment to the U.S. Constitution and *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Ohio Supreme Court has held that

> an autopsy report that is neither prepared for the primary purpose of accusing a targeted individual nor prepared for the primary purpose of providing evidence in a criminal trial is nontestimonial, and its admission into evidence at trial under Evid.R. 803(6) as a business record does not violate a defendant's Sixth Amendment confrontation rights.

*State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 63. The Supreme Court also has held that "the availability of the original [medical examiner] is irrelevant." *State v. Adams*, 146 Ohio St.3d 232, 2016-Ohio-3043, ¶ 5. That is because evidence that falls "within the scope of the [business-records exception] is admissible 'even though the declarant is available as a witness.'" *Id.*, quoting Evid.R. 803.

{¶15} Dr. Kohler specifically testified that K.B.'s autopsy report was a business record kept by her office, and Mr. Jones has made no attempt to argue that the report was inadmissible under Evid.R. 803(6). *See* App.R. 16(A)(7). Even assuming the trial court erred when it admitted Dr. Kohler's personal opinions about K.B.'s cause of death, the autopsy report itself was admissible through Dr. Kohler. *See Maxwell* at ¶ 63; *Adams* at ¶ 5. The autopsy report set forth K.B.'s cause of death. Moreover, Mr. Jones took the stand and admitted that he killed K.B. Given the admissibility of the autopsy report and Mr. Jones' own testimony, this Court cannot conclude that the admission of Dr. Kohler's testimony affected his substantial rights to the extent that it

affected the outcome of his trial. *See Barnes*, 94 Ohio St.3d at 27. Because Mr. Jones has not shown that the trial court committed plain error when it allowed Dr. Kohler's testimony, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 1

DANIEL JONES WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10, & 16 OF THE OHIO CONSTITUTION WHEN COUNSEL DID NOT OBJECT TO UNQUALIFIED EXPERT TESTIMONY AND PRESENTED JONES' TESTIMONY TO ESTABLISH A MITIGATION CLAIM THAT COULD NOT BE REASONABLY DEMONSTRATED.

{¶16} In his first assignment of error, Mr. Jones argues that he received ineffective assistance of counsel. He argues that his attorneys engaged in ineffective assistance when they failed to object to Dr. Kohler's testimony. He further argues that his attorneys engaged in ineffective assistance when they had him (Mr. Jones) testify to support their theory of voluntary or involuntary manslaughter. For the following reasons, this Court rejects his arguments.

{¶17} To demonstrate ineffective assistance of counsel, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id.* at 694. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 697.

{¶18} To the extent Mr. Jones argues that his attorneys were ineffective for failing to object to Dr. Kohler's testimony, this Court has already determined that the admission of her testimony did not affect the outcome of his trial. *See* Discussion, *supra*. The autopsy report was admissible and evidenced the cause and manner of K.B.'s death. Moreover, Mr. Jones admitted that he killed K.B. when he testified in his own defense. Mr. Jones has not shown that, had his attorneys objected to Dr. Kohler's testimony, the outcome of his trial would have been different. *See Strickland* at 694. Accordingly, this Court rejects his argument insofar as it pertains to his attorney's failure to object to Dr. Kohler's testimony. *See State v. Tyus*, 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 31.

{¶19} Next, Mr. Jones argues that his attorneys engaged in ineffective assistance of counsel when they called him to testify in his own defense. Mr. Jones testified that K.B. was an acquaintance he sometimes met for the purpose of sharing drugs and engaging in sexual activity. He testified that he had already been awake for several days on the day he caused K.B.'s death because he had been ingesting crack cocaine and methamphetamine. It was his testimony that he brought K.B. to his apartment and the two got high together. Mr. Jones testified that they began to argue when he discovered that K.B. had taken the Garmin GPS from his girlfriend's car. He testified that, as their argument intensified, he hit K.B. and the two began "smack[ing] each other around for a little bit * * *." Mr. Jones then began choking K.B. Because K.B. kept hitting him in the face, Mr. Jones testified, he spun her around and put her in a chokehold. Mr. Jones testified that K.B. eventually went limp and he realized that he had killed her.

{¶20} Mr. Jones argues that his attorneys should not have allowed him to testify because, as a matter of law, his testimony did not support a claim of manslaughter. He notes that voluntary intoxication is not a defense. He further notes that no reasonable juror hearing his testimony could

have concluded that he was subjected to serious provocation, justifying a sudden fit of rage on his part. According to Mr. Jones, his testimony only served to prove the State's case and foreclosed any chance of the jury concluding that reasonable doubt existed.

{¶21} This Court has routinely recognized that "debatable trial strategies do not constitute ineffective assistance of counsel." *State v. Shirley*, 9th Dist. Summit No. 20569, 2002 WL 5177, *7 (Jan. 2, 2002). "It is difficult to imagine a better example of trial strategy than a decision of whether a defendant should testify on his own behalf." *State v. Mabry*, 9th Dist. Medina No. 2514-M, 1996 WL 577701, *3 (Oct. 9, 1996). "'The advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is ''a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.''" *State v. Nesbit*, 9th Dist. Wayne No. 05CA0021, 2006-Ohio-921, ¶ 9, quoting *State v. Essinger*, 3d Dist. Hancock No. 5-03-15, 2003-Ohio-6000, ¶ 41, quoting *State v. Winchester*, 8th Dist. Cuyahoga No. 79739, 2002-Ohio-2130, ¶ 12.

{¶22} The record reflects that Mr. Jones waited until mid-trial to tell his attorneys that he had killed K.B. At the start of trial, his attorneys moved the court to delay their opening statement until after the State presented its case-in-chief. His attorneys informed the court that they had discussed voluntary and involuntary manslaughter with Mr. Jones, but he had consistently taken the position that he was not involved in K.B.'s death. His attorneys explained that their defense strategy might change once Mr. Jones heard the State present all of the evidence against him. Sure enough, Mr. Jones admitted his involvement after the State presented its case. At that point, his attorneys argued the theories of voluntary and involuntary manslaughter.

{¶23} The record reflects that the State presented a strong case against Mr. Jones. His DNA was found inside K.B.'s vagina and on a cutting of the paper towels found wrapped around

her head. Her blood was found on the front passenger's seat of his girlfriend's car, and there was evidence that he had possession of the car on the evening of the murder. His cell phone was used in the area where the car was found, the car had not been broken into, and someone saw a lone male taking a mattress from the back of a car at the location where K.B.'s body was found.

{¶24} Even though the jury ultimately rejected any claim of voluntary or involuntary manslaughter, Mr. Jones' attorneys were successful in obtaining jury instructions on those lesser-included offenses. Given the strength of the State's case and, specifically, the DNA evidence against Mr. Jones, his attorneys reasonably could have decided the better strategy was to have him explain his actions rather than continue to deny any involvement. Because the record supports the conclusion that the decision to have him testify was a tactical one, this Court cannot conclude that the decision amounted to ineffective assistance of counsel. *See Nesbit*, 2006-Ohio-921, at ¶ 9. Mr. Jones' argument to the contrary lacks merit.

{¶25} Lastly, Mr. Jones argues that the alleged errors his attorneys committed by not objecting to Dr. Kohler's testimony and by calling him to testify, when combined, deprived him of a competent defense. Yet, Mr. Jones has not shown that his attorneys engaged in a deficient performance when they called him to testify in his own defense. Nor has he shown that he sustained prejudice as a result of any alleged failure on their part to object to Dr. Kohler's testimony. "Under these circumstances, we cannot find that cumulative error exists." *State v. Hanford*, 9th Dist. Summit No. 29204, 2019-Ohio-2987, ¶ 38. His first assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 3**

DANIEL JONES' CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT WERE NOT SUPPORTED BY SUFFICIENT ADMISSIBLE EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH

AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶26} In his third assignment of error, Mr. Jones argues that his convictions for murder and felonious assault are based on insufficient evidence. For the following reasons, this Court rejects his argument.

{¶27} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶28} Mr. Jones' sufficiency argument is extremely limited. He argues that the State failed to present any "competent evidence" that he caused K.B.'s death. That is because the State relied on Dr. Kohler's testimony to prove causation and, according to Mr. Jones, her testimony and opinions were improperly admitted. He essentially asks this Court to disregard her testimony in conducting its review. Yet, an appellate court must "review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, *whether such evidence was properly admitted or not.*" (Emphasis added.) *State v. Dixon*, 9th Dist. Medina Nos. 11CA0065-M, 11CA0087-M, 2012-Ohio-4428, ¶ 18. Mr. Jones concedes that Dr. Kohler's testimony, if considered, "would be sufficient to present prima facie causation." Moreover, he has not set forth

any additional argument that the evidence presented at trial was insufficient to sustain his convictions. *See* App.R. 16(A)(7).

{¶29} Because Mr. Jones has conceded that Dr. Kohler's testimony provides sufficient support for his convictions and because this Court cannot ignore that testimony, *see Dixon* at ¶ 18, this Court rejects Mr. Jones' argument that his murder and felonious assault convictions are based on insufficient evidence. *See State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 49-51. This Court also declines to conduct any additional review of the sufficiency of the evidence, as Mr. Jones has limited his argument to Dr. Kohler's testimony and has not set forth any additional argument in that regard. *See id.* at ¶ 50. Upon review, Mr. Jones' third assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 4

DANIEL JONES' CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT WERE AGAINST THE MANIFEST WEIGHT OF THE ADMISSIBLE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶30} In his fourth assignment of error, Mr. Jones argues that his murder and felonious assault convictions are against the manifest weight of the evidence. This Court rejects his argument.

{¶31} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶32} This Court has repeatedly recognized that "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. While sufficiency tests the State's burden of production, manifest weight tests its burden of persuasion. *State v. Taylor*, 9th Dist. Summit No. 28746, 2018-Ohio-2921, ¶ 26. The concepts are not interchangeable, and it is inappropriate to combine them. *See State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11.

{¶33} Though Mr. Jones cites the manifest weight standard in his brief, his argument sounds strictly in sufficiency. He once again argues that his murder and felonious assault convictions must be reversed because they are premised upon improper testimony (i.e., Dr. Kohler's testimony). He asserts that, without that testimony, the jury could not have concluded beyond a reasonable doubt that he caused K.B.'s death.

{¶34} Mr. Jones "has not challenged any of the State's evidence as 'unreliable or lacking credibility.'" *State v. Webb*, 9th Dist. Summit No. 28437, 2018-Ohio-4199, ¶ 6, quoting *State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. He also has not addressed the persuasiveness of the evidence or any alleged conflicts in the evidence. *See State v. Vanest*, 9th Dist. Summit No. 28339, 2017-Ohio-5561, ¶ 34. This Court will not develop a manifest weight argument on an appellant's behalf. *See Mukha* at ¶ 11. "Because Mr. [Jones] has not developed an argument to support his manifest weight challenge, we decline to conduct a manifest weight analysis." *State v. Auerswald*, 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 50. His fourth assignment of error is overruled.

III.

**{¶35}** Mr. Jones' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JEREMY A. VEILLETTE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.